Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| ANDRE LEFRANC<br><br>Parte Recurrida<br><br>v.<br><br>PRLP FE PROPERTIES LLC C/O CPG ISLAND SERVICING LLC; UNIVERSAL INSURANCE COMPANY<br><br>Parte Recurrente<br><br>DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR<br><br>Agencia Recurrida | TA2025RA00110 | Revisión de Decisión Administrativa procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm.: SAN-2023-0016199<br><br>Sobre: Ley Núm. 130 de 13 de junio de 1967, según enmendada |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Rodríguez Flores, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de octubre de 2025.

PRLP FE Properties, LLC (PRLP o recurrente) presentó su *Recurso de Revisión Judicial* y solicitó que revoquemos la Resolución emitida el 26 de junio de 2025 por el Departamento de Asuntos del Consumidor (DACo).[1] Mediante dicho dictamen, declaró *ha lugar* a la *Querella* presentada por el señor André Lefranc (señor Lefranc o recurrido) y, consecuentemente, ordenó a PRLP reparar el talud, el patio y las verjas ubicadas en la residencia del recurrido.

Evaluado el recurso, la oposición del señor Lefranc y los documentos que conforman el apéndice y el expediente

---

[1] *Recurso de Revisión Judicial,* SUMAC-TA del recurso TA2025RA00110, entrada 1.

administrativo original SAN2023-0016199, a la luz del derecho aplicable, revocamos la *Resolución* recurrida.

**I.**

El 30 de julio de 2021, el señor Lefranc adquirió de PRLP una propiedad sita en Guaynabo mediante escritura pública.[2]

El 22 de septiembre de 2023, el señor Lefranc presentó ante el DACo una *Querella* contra PRLP.[3] Alegó que, en octubre de 2021 (tres meses después de la compraventa), el desarrollador PRLP instaló una malla en el talud detrás de su propiedad que invadió su patio sin su consentimiento. El señor Lefranc indicó que, casi un año después, tras el paso del Huracán Fiona el 18 de septiembre de 2022, observó que el talud en el patio posterior se deslizó, ocasionando una grieta y el colapso de ciertas verjas que marcaban los lindes de su terreno. Relató que, el 20 de septiembre de 2022, notificó vía correo electrónico al desarrollador sobre el deslizamiento, para lo cual éste envió al licenciado Carlos Lázaro y al ingeniero Luis O. García (geotécnico consultor) a inspeccionar la propiedad. Tras la inspección realizada el 21 de septiembre de 2022, el licenciado Carlos Lázaro le cursó una carta al señor Lefranc en la que explicó que el deslizamiento se debió a que éste sembró unas plantas en la línea de colindancia trasera que intervino con la malla de control de erosión del talud, desniveló el suelo y violó las condiciones restrictivas aplicables a la urbanización, o por razón del evento de fuerza mayor. De esa forma, el desarrollador negó responsabilidad por el deslizamiento. Ante ello, el señor Lefranc solicitó como remedio que se obligara a PRLP a reparar el talud, el

---

[2] Escritura Núm. 136 sobre *Segregación, Constitución de Servidumbre, Compraventa y Declaración de Hogar Seguro*, otorgada el 30 de julio de 2021, ante el notario público Oscar Alejandro Rodríguez Vega. *Íd.*, apéndice XV.

[3] La *Querella* incluida como apéndice I del recurso tiene fecha de 14 de septiembre de 2023. *Íd.*, apéndice I. Sin embargo, la *Querella* que forma parte del expediente administrativo original tiene fecha de 22 de septiembre de 2023.

patio de la propiedad y las verjas colindantes, y que se le indemnizara por los daños y perjuicios causados.[4]

Posteriormente, el 27 de diciembre de 2023, DACo citó a las partes para una inspección de la propiedad pautada para el 19 de marzo de 2024.[5] A la inspección, solamente compareció el señor Lefranc por derecho propio.

Realizada la inspección, el técnico de investigación del DACo, señor Edgardo Amador Acevedo, rindió un informe notificado el 11 de julio de 2024, a las partes y sus respectivas representaciones legales.[6]

En su informe, el técnico del DACo consignó lo siguiente:

De la vista de inspección realizada[,] se pudo observar de un deslizamiento de un talud con un visible deterioro hacia el perímetro de la propiedad por acción o pérdida de resistencia del terreno, creándose por los excesos de lluvia, erosión, deslizamiento[s] superficiales, sujetos a fuerzas de[l] suelo en zonas de relleno o composta, con expectativa [de que] pueda provocar [un] movimiento brusco que afecte considerablemente el suelo con falla y deformación a lo largo de la vida útil del terreno[,] afectando el perímetro hacia el interior de la propiedad, cuyo comportamiento mecánico en general está afectando zonas cercanas cada vez más profundas del talud, que ponen mayor riesgo a la propiedad, por problemas del terreno.[7]

Tras ello, su opinión fue la siguiente:

Muchas deficiencias deben de ser corregida[s] por la inestabilidad, se [recomienda] la remoción del terreno, nivelar [el] suelo como solución adicional a la resistencia física del talud.

Se recomienda de (sic) un peritaje adicional del ingeniero en el área de la geotecnia, para revaluar el área o el [á]ngulo de inclinación y preparar un diseño meticuloso y una comprensión profunda del terreno.

Para garantizar que no solo cumpla con su función, sino que también se mantengan (sic) seguro a lo largo del

---

[4] El 25 de noviembre de 2024, notificada el 9 de enero de 2025, se enmendó la querella para incluir como coquerellada a Universal Insurance Company, afianzadora de PRLP. Véase, expediente administrativo original.

[5] Notificación de Citación de Inspección, *Recurso de Revisión Judicial*, SUMAC-TA del recurso TA2025RA00110, apéndice III. Esta citación fue notificada a las siguientes direcciones: (1) PRLP, 898 Muñoz Rivera Ave. Suite 207, San Juan, Puerto Rico 00927-4303; (2) señor Lefranc, Garden Hills Chalets, B-2 Calle Flamboyán 11-A, Guaynabo, Puerto Rico 00966.

[6] *Informe de Inspección de Construcción, Íd.*, apéndice V.

[7] *Íd.*, pág. 2.

tiempo y aumentar su resistencia mejorando la característica del talud y su resistencia...[8]

En la parte de observaciones, el técnico de investigación expuso:

Querellante ha dado amplia oportunidad al querellado de reparar y corregir las deficiencias, mediante múltiples comunicaciones verbales y escritas. Sin embargo, al día de la inspección no se presentaron o no han querido reparar dichas deficiencias, así como cualquier reclamación presente en la misma, y se hacen formar parte integra[l] de esta querella.[9]

El técnico de investigación estimó los costos de reparación en 7,302.33 y recomendó el caso para vista administrativa.[10] La Notificación de Informe de Inspección apercibió a las partes de su derecho a expresar sus objeciones y de presentar prueba pericial para refutar lo allí expresado.

El 30 de julio de 2024, PRLP presentó una *Moción para Eliminar del R[é]cord el Informe de Inspección*.[11] Mediante esta, alegó que la citación a la inspección se notificó directamente a PRLP cuando debió remitirse a su abogado de récord, quien asumió su representación legal el 11 de abril de 2024, y arguyó que la falta de notificación a su abogado causó la nulidad de la inspección realizada. Por ello, pidió que se eliminara el informe de inspección del expediente administrativo, y que se coordinara y notificara una nueva inspección a su abogado de récord para que éste estuviera presente. En dicha moción, no se planteó argumento alguno en cuanto a notificación defectuosa a la entidad PRLP, propiamente. Tampoco se objetaron los hallazgos del informe de inspección.

El 16 de octubre de 2024, DACo emitió una *Notificación y Orden*.[12] En ella, la agencia resolvió que no tenía que notificar la citación a la inspección a la representación legal de PRLP debido a

---

[8] *Íd.*
[9] *Íd.,* pág. 3.
[10] *Íd.*
[11] SUMAC-TA del recurso TA2025RA00110, apéndice VI.
[12] *Notificación y Orden*, Íd., apéndice VII.

que, para la fecha en que la agencia citó a las partes para la inspección, al igual que para la fecha en que la inspección se llevó a cabo, el abogado de PRLP aún no había asumido la representación legal de la entidad. Por lo tanto, el DACo declaró no ha lugar al petitorio de PRLP.

PRLP presentó su contestación a la querella el 28 de octubre de 2024. En ella, negó las alegaciones esbozadas por el señor Lefranc y planteó varias defensas afirmativas.[13] Más adelante, el 16 de abril de 2025, las partes presentaron el *Informe de Conferencia con Antelación a Vista Administrativa.*

El 26 de junio de 2025, notificada por correo al día siguiente, el DACo pronunció la *Resolución* objeto del presente recurso, en la que declaró *ha lugar* a la *Querella* y ordenó a PRLP reparar el talud, el patio y las verjas en la residencia del señor Lefranc.[14]

Como surge de la resolución, la vista administrativa se llevó a cabo los días 22 y 24 de abril de 2025. Las partes comparecieron representadas por sus respectivos abogados. La prueba testifical del señor Lefranc consistió en su propio testimonio; el Sr. José Meléndez, quien fue calificado como perito en agrimensura, y testificó sobre su plano de mensura en la residencia del recurrente y sobre el patrón de drenaje pluvial de la residencia; y el ingeniero Alan Crumley, quien fue calificado como perito ingeniero geotécnico, y opinó en cuanto a las causas de los daños sufridos en la propiedad.

Los testigos de PRLP fueron los ingenieros Luis García y Gabriel Echandi, quienes fueron calificados como peritos, y brindaron su opinión en cuanto a la causa de los daños sufridos en la propiedad del señor Lefranc, testificando que éste cambió el

---

[13] El 26 de diciembre de 2024, PRLP presentó su *Contestación a Querella enmendada.* El 22 de enero de 2025, Universal Insurance Company también presentó su contestación a la querella enmendada. Véase, expediente administrativo original.
[14] *Resolución, Recurso de Revisión Judicial,* SUMAC-TA del recurso TA2025RA00110, entrada II.

patrón de drenaje pluvial del patio al sembrar unas plantas cerca de la colindancia.[15]

De la resolución recurrida surge, además, la siguiente prueba estipulada por las partes, conforme se desprende del Informe de Conferencia con Antelación a la Vista:

1. Escritura Número ciento treinta y seis (136) sobre Segregación, Constitución de Servidumbre, Compraventa y Declaración de Hogar Seguro otorgada en la ciudad de San Juan, Puerto Rico, ante el notario Oscar Alejandro Rodríguez Vega. (Exhibit I conjunto)

2. Escritura 36 titulada "Deed of Declaration of Rights, Restrictions, Conditions and Constitution of Restrictive Covenants and Establishment of Provisions for the Belmont Homeowners Association, Inc." fechada [a]l 28 de febrero de 2020. (Exhibit II conjunto)

3. Correo electrónico enviado por Andr[é] Lefranc el 20 de septiembre de 2022 a las 11:22 am a abrito@britodev.com. (Exhibit III conjunto)

4. Carta enviada a Andr[é] Lefranc el 22 de septiembre de 2022 por Carlos A. Lázaro. (Exhibit IV conjunto)

5. Fianza 300059362 expedida a nombre de ABZCO, LLC. (Exhibit V conjunto)

Durante la vista administrativa, se admitieron en evidencia los siguientes documentos:

1. Informe de Inspección de Construcción.

2. Fotos de los daños sufridos por la propiedad del señor Lefranc (Exhibits I, II, III, IV, V, VI, VII, VIII, IX y X de la parte querellante)

3. Curriculum Vitae del Ingeniero Agrimensor José Meléndez. (Exhibit XI de la parte querellante)

4. Agrimensura preparada por el Ingeniero Agrimensor José Meléndez (Exhibit XII de la parte querellante).

5. Curriculum Vitae del Ingeniero Geotécnico Alan Crumley. (Exhibit XIII de la parte querellante).

6. Informe pericial preparado por el ingeniero geotécnico Alan Crumley. (Exhibit XIV de la parte querellante)

7. CV del Ing. Luis García (Exhibit I de PRLP FE Properties)

---

[15] Por su parte, Universal Insurance Company presentó como testigo al señor Cándido Ríos, ajustador, quien testificó en cuanto a los términos y condiciones de la fianza, la que alegó venció el 30 de julio de 2023.

8. CV del Ing. Gabriel Echandi (Exhibit II de PRLP FE Properties)

9. Informe del Ing. Gabriel Echandi con sus anejos (Exhibit III de PRLP FE Properties)

Desfilada la prueba testifical y documental, el DACo formuló las subsiguientes determinaciones de hechos en su dictamen:

1. El 30 de junio de 2021, la parte querellante, mediante Escritura Número ciento treinta y seis (136) sobre Segregación, Constitución de Servidumbre, Compraventa y Declaración de Hogar Seguro, otorgada en la ciudad de San Juan, Puerto Rico, ante el notario Oscar Alejandro Rodríguez Vega, adquirió de la parte coquerellada, PRLP FE Properties, LLC, la propiedad que se describe a continuación:
---------LOTE NUMERO SESENTA Y UNO (61)------------
---"URBANA: Predio de terreno que radica en el Barrio Hato Nuevo, del término municipal de Guaynabo identificado como el solar número sesenta y uno (61) del proyecto de urbanización Belmont, con cabida superficial de ciento ochenta y cinco metros cuadrados con quinientos trece milésimas de otro (185.513 m2). En lindes por el NORTE, con el solar número sesenta y dos (62) de la urbanización; por el SUR con el solar número sesenta (60) de la urbanización; por el ESTE, con la charca de retención de la urbanización; y por el OESTE con la calle número doce (12) de la urbanización.----------------------------------------------------
----Afecta por Telecomunicaciones de Puerto Rico con un ancho de un metro con cincuenta y dos centésimas de otro (1.52 m) que discurre por la colindancia Oeste de la propiedad.--------------------------------------------
----Afecta por servidumbre pluvial a favor de Belmont Homeowners Association, Inc. con un ancho de tres metros (3.00 m) que cruza el patio trasero del solar localizado al Este de la propiedad.------------------------
----Enclava en este solar una estructura de dos plantas dedicada a vivienda.-----------------------------------------
----La antes descrita propiedad no ha sido segregada ni tasada para fines contributivos por lo que consta bajo el número de Catastro: 171-015-062-53-000.------------

2. En la primera página de la referida Escritura quien comparece como la primera parte es PRLP FE Properties, LLC quien se describe como la parte Vendedora.

3. El inciso Cuarto de la página 5 de la referida escritura, establece que "la parte Vendedora ha desarrollado un proyecto residencial conocido como Belmont At Finca Elena. Aquí es donde ubica la propiedad de la parte querellante objeto de la presente querella.

4. Previo a otorgar la referida escritura, la parte querellante inspeccionó la propiedad y la misma no contaba con grieta alguna dentro de los límites de su patio. Al mes siguiente de adquirir la propiedad, la parte querellante se mudó a la propiedad.

5. Al momento de la parte querellante mudarse a la propiedad, no había instalada malla de control de erosión alguna en el talud sito en la parte posterior del patio de la propiedad.

6. Durante el mes de octubre de 2021, una tercera parte ajena a la parte querellante instaló una malla de control de erosión sobre el talud sito en la parte posterior del patio de la propiedad.

7. El señor Luis García, quien diseñó el proyecto, recomendó que se instalar[a] la misma debido a que al menos otro talud del proyecto residencial había sufrido un deslizamiento previamente.

8. La malla de control de erosión instalada invadía la propiedad de la parte querellante.

9. Posteriormente, la parte querellante sembró unas plantas "cupey" en los límites de su propiedad.

10. Al sembrar las plantas "cupey", la parte querellante intervino únicamente con la parte de la malla de control de erosión que invadía su propiedad.

11. El 19 de septiembre de 2022, luego del paso del Huracán Fiona, la parte querellante observó que el talud en la parte posterior del patio de su residencia se deslizó causando que se formara una grieta dentro de los límites del patio de la propiedad del querellante.

12. El 20 de septiembre de 2022, el querellante le reclamó a ABZCO, LLC, contratista del proyecto.

13. El 22 de septiembre de 2022, [ABZCO], LLC negó responsabilidad alguna, indicando que los daños se debieron a los actos de la parte querellante al intervenir con la malla de control de erosión en violación a la cláusula restrictiva que lee como sigue:

"(UU) As a protective measure in the slopes surrounding the Project, there is netting that was placed by the Company No person shall be allowed to enter the area where netting has been placed except to provide maintenance and/or repairs to the area. **If any damage is caused to the netting or slopes by a resident or someone under the permanent or temporary custody of a resident, said resident shall be responsible for the repair costs**."

14. La citada cláusula restrictiva no se refiere a la malla de control de erosión instalada por recomendación del señor Luis García, quien diseñó el proyecto, debido a que al menos otro talud del proyecto residencial había sufrido un deslizamiento previamente.

15. La citada cláusula restrictiva se refiere a la malla horizontal instalada en el interior del talud, con la cual la parte querellante nunca intervino.

16. En adición, ABZCO, LLC negó responsabilidad alegando que la parte querellante cambió los niveles del patio al sembrar las plantas "cupey" en violación a la cláusula restrictiva que lee como sigue:

"(ZZ) Change of Grade. **No Owner (or his/her/its agents or employees) shall, at any time, alter the grading of any lot of any Family Dwelling Unit along its corresponding property line**. Any alteration of the grading of the lot of a Family Dwelling Unit (other than that along the property line, which shall always be strictly and absolutely prohibited) shall be subject to the prior review and written approval of the Architectural Review Committee."

17. La parte querellante no cambió los niveles del patio al sembrar las plantas "cupey".

18. La parte querellante no violó condición restrictiva alguna al sembrar las matas cupey e interferir con la malla de erosión que invadía su patio.

19. La parte querellante no cambió el patrón de drenaje pluvial del patio al sembrar las matas cupey.

20. La causa del deslizamiento en el talud que ocasionó daños en el interior del patio de la propiedad del querellante fue la instalación o selección incorrecta de mallas de refuerzo y/o pobre compactación y/o preparación deficiente de la base del talud por parte de la parte querellada.

21. El 5 de junio de 2023, dentro del término de caducidad de 2 años establecido en la "Ley de la Oficina del Oficial de Construcción adscrita al Departamento de Asuntos del Consumidor", Ley Núm. 130 de 13 de junio de 1967, según enmendada, la parte querellante radicó la querella de epígrafe.

22. El 17 de octubre de 2023, este Honorable Departamento ordenó a la parte coquerellada, PRLP FE Properties a someter la fianza requerida.

23. No fue hasta el pasado 28 de octubre de 2024 que PRLP FE Properties cumplió con lo ordenado y sometió la fianza expedida a nombre del urbanizador, ABZCO, LLC.

24. La compañía de fianza es Universal Insurance Company.

25. La parte querellada no ha llevado a cabo gestión alguna para intentar reparar el talud y el patio de la propiedad del querellante.

26. La parte querellante ha dado amplia oportunidad al querellado de reparar y corregir las deficiencias mediante múltiples comunicaciones verbales escritas. (Énfasis original).

Tras esbozar el derecho aplicable a la controversia, el DACo coligió que el señor Lefranc presentó su querella dentro del término de dos (2) años de caducidad establecido en la *Ley de la Oficina del Oficial de Construcción adscrita al Departamento de Asuntos del Consumidor,* Ley Núm. 130 de 13 de junio de 1967, y el *Reglamento para regular las distintas actividades que se llevan a cabo en el negocio de la construcción de viviendas privadas en Puerto Rico,* Reglamento Núm. 2268 de 17 de agosto de 1977 (Reglamento Núm. 2268).

En cuanto a los méritos de la reclamación, el DACo coligió que el señor Lefranc probó que, luego del paso del Huracán Fiona, el talud en la parte posterior del patio de su residencia se deslizó causando que se formara una grieta dentro de los límites del patio de su propiedad. El DACo destacó que, del informe de inspección del técnico de la agencia, así como del testimonio del perito agrimensor José Meléndez y su plano de agrimensura, surgía que el patio del señor Lefranc sufrió daños dentro de sus límites. A su vez, el DACo dedujo que el plano de agrimensura demostró que el señor Lefranc no alteró el patrón de drenaje pluvial ni los niveles del patio, ya que el nivel de la colindancia del patio con el talud es mayor al nivel del interior del patio. La agencia también precisó que el testimonio del perito geotécnico Alan Crumley estableció que la causa que con mayor probabilidad provocó el deslizamiento en el talud que ocasionó los daños en el interior del patio de la propiedad del señor Lefranc fue la instalación o selección incorrecta de mallas de refuerzo y/o pobre compactación y/o preparación deficiente de la base del talud por parte de PRLP.

El DACo no le confirió valor probatorio al testimonio del perito de PRLP, ingeniero Gabriel Echandi, quien admitió que no se personó a la propiedad del señor Lefranc a observar los daños y verificar si el patrón del drenaje pluvial fue alterado para emitir su

informe pericial. La agencia puntualizó que tampoco concedió valor probatorio a la opinión del ingeniero Luis García, quien manifestó estar de acuerdo con el informe pericial del ingeniero Echandi.

En virtud de lo anterior, el DACo concluyó que procedía que PRLP, como vendedor y desarrollador de proyecto, reparara el talud, el patio y las verjas en la propiedad del señor Lefranc. Empero, desestimó la causa de acción por daños y perjuicios instada por éste debido a que no se presentó prueba para sustentarla.[16]

Insatisfecho con la determinación, PRLP presentó una *Moción Solicitando Reconsideración de [la] Resolución* el 21 de julio de 2025.[17] En respuesta, el DACo pronunció una *Resolución en Reconsideración* el 22 de julio de 2025, mediante la cual se declaró sin jurisdicción debido a la presentación tardía del petitorio.[18]

Entonces, oportunamente, 28 de julio de 2025, PRLP presentó el recurso de revisión de epígrafe, en el que hizo los siguientes señalamientos de error:

> Erró el DACo al no concluir que la querella en contra de PRLP esta prescrita y/o que el deslizamiento no era un defecto de construcción a tenor con el Reglamento 2268.

> El DACo violó el debido proceso de ley de PRLP al no eliminar del récord el informe del inspector del DACo y ordenar una nueva inspección.

> Erró el DACo al no concluir, a tenor con la prueba ofrecida en la vista administrativa, que el deslizamiento se debió a acciones de la recurrida.[19]

Al señalarse que el DACo erró en la apreciación de la prueba, el 5 de septiembre de 2025, emitimos una *Resolución*[20] mediante la cual concedimos a PRLP un término a vencer el lunes, 22 de

---

[16] El DACo también desestimó la querella en cuanto a la afianzadora Universal Insurance Company, debido a que ésta fue traída al pleito el 25 de noviembre de 2024, cuando ya había transcurrido el término de dos (2) años desde la compraventa.

[17] *Moción Solicitando Reconsideración de [la] Resolución, Recurso de Revisión Judicial*, SUMAC-TA del recurso TA2025RA00110., apéndice XX1.

[18] *Resolución en Reconsideración, Íd.,* apéndice XXII.

[19] *Recurso de Revisión Judicial, Íd.,* entrada 1, pág. 14.

[20] *Resolución, Íd.,* entrada 5.

septiembre de 2025, para presentar la transcripción de la prueba oral desfilada en las vistas administrativas. Advertimos a la parte que, de no reproducir la prueba oral de forma oportuna, se consideraría renunciado todo señalamiento de error cuya adjudicación dependiera de la evaluación de la prueba oral. PRLP no presentó la transcripción de la prueba oral en el plazo concedido.

Por su parte, en cumplimiento con una resolución emitida a tales efectos, el 12 de septiembre de 2025, el DACo presentó el original del expediente administrativo SAN-2023-0016199.[21]

El 24 de septiembre de 2025, PRLP presentó una *Moción Informativa*[22] en la que anunció que no presentará la transcripción de la prueba oral y su renuncia al tercer error señalado en su recurso. Ante ello, de conformidad con lo dispuesto en la Regla 76 de nuestro Reglamento[23], el 25 de septiembre de 2025, emitimos una *Resolución* en la que dimos por renunciado su derecho a reproducir la prueba oral y el tercer señalamiento de error, cuya adjudicación dependía de la evaluación de la prueba oral.

El 22 de octubre de 2025, el señor Lefranc presentó su *Alegato en Oposición.* Para sustentar que presentó la querella dentro del término de caducidad de dos (2) años establecido en la *Ley de la Oficina del Oficial de Construcción,* mencionó que compró su vivienda el 30 de julio de 2021, y directamente aludió a la sección de la querella titulada *Datos de la Querella,* en la que se indica que la "*Fecha reclamó al querellado: 5 de junio de 2023*". El señor Lefranc no recurrió a alguna otra prueba en el expediente administrativo para cimentar su planteamiento. También presentó sus argumentos relativos a los restantes señalamientos de error. Así, indicó sus razones para calificar un deslizamiento de tierra como un defecto de

---

[21] *Moción en cumplimiento de Resolución, Íd.*, entrada 6.
[22] *Moción Informativa, Íd.,* entrada 7.
[23] Regla 76 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 98-101, 215 DPR __ (2025).

construcción, así como aquellas por las cuales no procede eliminar del expediente administrativo el informe del inspector del DACo.

**II.**

**A.**

Es norma firmemente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones de los organismos administrativos. Ello, dado que las agencias administrativas cuentan con vasta experiencia y conocimiento especializado en cuanto a los asuntos que les han sido encomendados.[24]

Como resultado, la decisión de una agencia administrativa gozará de una presunción de legalidad y corrección que será respetada, siempre que la parte que la impugna no produzca evidencia suficiente para rebatirla.[25]

En cuanto a las determinaciones de hecho que realiza una agencia, éstas serán sostenidas por el tribunal si se basan en evidencia sustancial que obra en el expediente administrativo.[26] Por evidencia sustancial se entiende "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[27] Por lo tanto, la parte afectada por la decisión administrativa deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial.[28]

---

[24] *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021), citando a *OCS v. Universal*, 187 DPR 164, 178 (2012); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800 (2012); *Pagán Santiago, et al. v. ASR*, 185 DPR 341, 358 (2012).

[25] *Transp. Sonnell, LLC v. Jta. Subastas ACT*, 214 DPR 633, 648 (2024); *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012).

[26] Sec. 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9675.

[27] *Rolón Martínez v. Superintendente*, 201 DPR 26, 36 (2018); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Otero v. Toyota*, 163 DPR 716, 728-729 (2005).

[28] *Otero v. Toyota*, supra, pág. 728.

Ahora bien, respecto a las conclusiones de derecho de las decisiones de las agencias administrativas, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, señala que éstas pueden ser revisadas en todos sus aspectos por el tribunal.[29]

Al respecto, recientemente, en *Vázquez v. Consejo de Titulares*[30], el Tribunal Supremo hizo eco de la decisión del foro federal en el caso *Loper Bright Enterprises v. Raimondo[31]*, y determinó que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. En *Vázquez,* el Tribunal Supremo enfatizó la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU*, supra.* Puntualizó que, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. Con ello, nuestro Tribunal Supremo pautó el fin de la deferencia absoluta a las apreciaciones de derecho arribadas por las agencias administrativas.[32] En fin, delimitó que la interpretación de la ley es una tarea que le corresponde a los tribunales y como corolario, los tribunales deben revisar las conclusiones de derecho en todos sus aspectos. Ello, como mecanismo interpretativo del poder judicial.[33]

Por consiguiente, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha

---

[29] Sec. 4.5 de la LPAU, 3 LPRA sec. 9675.
[30] *Vázquez v. Consejo de Titulares*, 216 DPR ___ (2025), 2025 TSPR 56 (resuelto el 21 de mayo de 2025).
[31] *Loper Bright Enterprises v. Raimondo*, ___ U.S. ___, 144 S. Ct. 2244, 219 L.Ed.2d 832 (2024)
[32] *Vázquez v. Consejo de Titulares*, supra.
[33] *Íd.*

encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales.[34]

## B.

La *Ley de la Oficina del Oficial de Construcción adscrita a la Administración de Renovación Urbana y Vivienda,* Ley Núm. 130 de 13 de junio de 1967 (Ley Núm. 130)[35], reglamenta y fiscaliza el negocio de viviendas privadas en Puerto Rico. El estatuto confiere jurisdicción al Departamentos de Asuntos del Consumidor (DACo) para atender querellas presentadas por cualquier comprador u optante de una propiedad cuando un constructor o urbanizador haya incurrido en cualquiera de las prácticas prohibidas por el estatuto.[36] De esta forma se proveyó una mayor protección a los compradores de viviendas garantizándoles la debida atención a sus problemas y facilitándoles el proceso de adjudicación de querellas.[37]

La Ley Núm. 130, *supra,* enumera una serie de situaciones que según el estatuto constituyen "prácticas indeseables en el negocio de la construcción de viviendas". Entre éstas, se encuentra "dej[ar] de corregir un defecto de construcción en una vivienda según éste sea definido por el reglamento puesto en vigor por el Oficial de Construcción".[38]

---

[34] *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021); *Torres Rivera v. Policía de Puerto Rico,* 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 744-745 (2012).

[35] 17 LPRA sec. 501 *et seq.*

[36] 17 LPRA sec. 511.

[37] *Muñoz v. Ten General,* 167 DPR 297, 304 (2006); *Rivera v. A & C Development Corp.,* 144 DPR 449-450 (1997).

[38] 17 LPRA sec. 509 (e). El *Reglamento para regular las distintas actividades que se llevan a cabo en el negocio de la construcción de viviendas privadas en Puerto Rico,* Reglamento Núm. 2268 de 17 de agosto de 1977 (Reglamento Núm. 2268), define los *defectos de construcción* como:

> [C]ualquier anormalidad, defecto, falta de accesorios, falla, deterioro prematuro, mal funcionamiento, inexactitud en las medidas o cualesquiera otra condición más allá de las tolerancias normales permisibles que pueda sufrir la estructura de vivienda o el área en que ésta esté enclavada o cualquier otro vicio o condición que exceda la medida de las imperfecciones que cabe esperar en

El Art. 11 de la citada ley establece que "las acciones para exigir responsabilidades por vicios o defectos construcción excepto aquellas que cualifiquen bajo la sec. 4124 del Título 31 [ruina de la edificación] **caducan** por el transcurso de dos años a partir del otorgamiento de las escrituras de compraventa".[39] A su vez, el mencionado artículo exige que "[a]l radicar la querella, el querellante ha[ga] constar que ha requerido previamente al urbanizador o constructor que remedie la práctica indeseable de construcción o que cumpla con la disposición pertinente sin que éste lo haya hecho".[40]

La Ley Núm. 130, *supra,* no desplaza el ordenamiento civil vigente, sino que protege a los compradores de residencias contra los defectos en la construcción que, por su naturaleza, no están dentro del alcance de lo que constituye una ruina de la edificación. Lo anterior es acogido en el propio estatuto que establece que nada en su interpretación debe entenderse como una restricción de los derechos concedidos en el Código Civil o cualquier otra ley.[41]

Respecto al término de dos (2) años de caducidad dispuesto en la *Ley de la Oficina del Oficial de Construcción* para el ejercicio de la acción por defectos de construcción, en *Muñoz v. Ten General,* 167 DPR 297 (2006), el Tribunal Supremo resolvió que dicho plazo será **computado desde el otorgamiento de la escritura de compraventa hasta la presentación de la querella ante el DACo**. De igual forma, el Tribunal puntualizó que, tratándose de un término de caducidad, una reclamación por defectos de

---

una construcción sin que se pueda imputar a una fuerza mayor y/o fenómeno natural, y que no se deban a maltrato, alteraciones, falta de mantenimiento, ni desgaste normal, siempre y cuando se notifiquen al urbanizador y/o constructor dentro del período de tiempo que establece el artículo 10 (j) de este Reglamento. Sección 10 (j).

[39] 17 LPRA sec. 511. (Énfasis suplido).
[40] *Íd.*
[41] 17 LPRA sec. 517.

construcción presentada al amparo de esa ley no admite interrupción extrajudicial.[42]

En el citado caso, al examinar el historial legislativo de la Ley Núm. 137 de 20 de julio de 1979 -que restableció a la *Ley de la Oficina del Oficial de Construcción* el término de caducidad de dos (2) años– el Tribunal Supremo expuso que "[e]l propósito [fue] precisamente establecer un término determinado para el ejercicio de la acción por vicios de construcción".[43]

### III.

En su primer señalamiento de error, PRLP sostiene que el señor Lefranc no presentó su querella dentro del término de caducidad de dos (2) años dispuesto en la Ley Núm. 130. Entonces, nos corresponde analizar si el señor Lefranc presentó de forma oportuna su querella en contra de PRLP.

Según discutido, debido a que toda determinación administrativa está protegida por una presunción de corrección y validez, la parte que acude a este Tribunal de Apelaciones tiene el deber de colocarnos en posición de conceder el remedio solicitado. No obstante, el criterio rector al que debemos atenernos al momento de revisar una decisión administrativa es el de la razonabilidad de la actuación de la agencia.

En términos generales, PRLP alegó que de la *Resolución* recurrida se desprendía que la determinación de hecho número 21, concerniente a la fecha de la presentación de la querella, no era cónsona con el expediente administrativo. A tales efectos, afirmó que la querella se presentó el 13 de septiembre de 2023[44], y no el 5 de junio de 2023, como precisó la agencia.

---

[42] *Íd.,* pág. 306.
[43] *Íd.*
[44] PRLP afirma que la querella se presentó el 13 de septiembre de 2023, pero en el expediente administrativo surge que la fecha de radicación fue el 22 de septiembre de 2023. No obstante, tal discrepancia no es sustancial para efectos del cálculo del término de caducidad de dos (2) años.

El expediente administrativo, cuyo original hemos examinado, evidencia que la querella se presentó el 22 de septiembre de 2023. El propio documento expone que el 5 de junio de 2023, fue la fecha en la que el señor Lefranc le reclamó al querellado por los defectos objeto de la querella. Sin embargo, el expediente no contiene documento alguno que sustente que fue el 5 de junio de 2023 cuando se radicó la querella. El único documento cuya fecha es similar, y podría haber dado lugar a confusión, es el informe pericial suscrito el 5 de junio de 2024, por el ingeniero geotécnico Alan Crumley, que corresponde al Exhibit XIV de la parte querellante.

Recapitulando los hechos del presente caso, el señor Lefranc adquirió su propiedad el 30 de julio de 2021. El inmueble presentó los defectos el 18 de septiembre de 2022. El 20 de septiembre de 2022, el señor Lefranc le reclamó a PRLP vía correo electrónico la existencia de los defectos. No obstante, la querella ante el DACo la presentó el 22 de septiembre de 2023. Para esta fecha, había transcurrido el término de caducidad de dos (2) años, contado desde el otorgamiento de la escritura de compraventa. Transcurrido dicho término de caducidad, se extinguió la causa de acción pretendida por el señor Lefranc al amparo de la Ley Núm. 130. Por ello, procedía que la agencia desestimara la querella.

De esta forma, PRLP cumplió con su deber de rebatir la presunción de corrección de las determinaciones administrativas y demostró que la determinación de la agencia número 21 no está basada en el expediente y, a su vez, que las conclusiones a las que llegó el DACo son irrazonables. Así pues, por entender que a PRLP le asiste la razón en su primer señalamiento de error, revocamos la *Resolución* recurrida y desestimamos la querella instada por el señor Lefranc.

Ante este escenario, no es necesario discutir el segundo señalamiento de error. Consignamos, además, que lo resuelto no

limita al señor Lefranc de ejercer los derechos concedidos en el Código Civil o cualquier otra ley para casos de defectos de construcción.

**IV.**

Por los fundamentos que anteceden, se revoca la *Resolución* recurrida y se desestima la querella instada por el señor Lefranc.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones